UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 21-CR-706-APM |
| v. | VIOLATION:<br>18 U.S.C. §§ 1349 |
| SEREIKA SAVARIAU, | (Conspiracy to Commit Wire Fraud Affecting a Financial Institution |
| Defendant. | |
| | FORFEITURE: 18 U.S.C. § 982(a)(2)(A), 21 U.S.C. § 853(p) |

## STATEMENT OF OFFENSE

The United States of America, by its attorney, the United States Attorney for the District of Columbia, and the Computer Crime and Intellectual Property Section of the U.S. Department of Justice, Criminal Division, respectfully submits the following Statement of Offense in the above-captioned case.

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything the defendant said, is it a recitation of all that the defendant said.

Had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following facts.

## BACKGROUND

1. Defendant Sereika Savariau resided in Jamaica.

2. The American Recovery and Reinvestment Act of 2009 ("ARRA") was a statute enacted by the United States Congress in 2009, whose purposes included promoting economic recovery and assisting those impacted by recession. The ARRA formed the Recovery

Accountability and Transparency Board (the "Recovery Board") to coordinate and conduct oversight of covered funds to prevent fraud, waste, and abuse.

3. The Treasury Department Federal Credit Union ("TDFCU") was a federally insured United States financial institution as defined by Title 18, United States Code, Section 20, and was based in the District of Columbia.

## THE FRAUDULENT DEBT RELIEF SCHEME

4. From at least on or about June 17, 2016, to at least on or about September 5, 2018, SAVARIAU knowingly and intentionally agreed with other persons – her conspirators – to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, such scheme and artifice affecting a financial institution, and to transmit wire/digital communications in interstate commerce for the purpose of executing that scheme. That is, SAVARIAU and her conspirators created and operated a series of fraudulent debt relief companies that tricked U.S. citizens into paying fees and disclosing personal identifying information, sensitive financial information, and identity documents, in an effort to obtain debt relief, which was actually non-existent.

5. The businesses and websites created by SAVARIAU and her conspirators included at least SERVgov LLC (at website servgov.org), National Credit Relief LLC (at website nationalcreditrelief.us), and American Bill Aid (at website americanbillaid.com), collectively "the websites."

6. The SERVgov website claimed to provide government-funded aid, through ARRA, for bill payment up to $60,000. Applicants were required to provide personal and financial information, two copies of government-issued identification, and payment of a 14.1217% processing fee to cover purported overhead costs. The required information included: full name, date of birth, social security number, physical address, email address, phone number, and the name

of the applicant's current or previous employer. Applicants were also asked to submit the name and contact information for their creditors, account numbers, and balances.

7. The National Credit Relief website stated that it was authorized under ARRA, overseen by the Recovery Board, and provided debt relief for up to $25,000 annually. Applicants were required to provide sensitive personal and financial information to apply for the program.

8. The American Bill Aid website required applicants to register for an account and then apply for the debt relief program. Applicants submitted personal and financial information to include: full name, date of birth, address, phone number, email address, name and contact information for their creditors, and account balances.

9. SAVARIAU used EmailMeForm, a service that collects information submitted through website forms and sends it to the account holder's email address. When victims submitted their personal and financial information to the websites, that information was collected through EmailMeForm, and sent to servloanllc@gmail.com, an email address controlled by the conspirators.

10. After the conspirators received a victim's personal and financial information, they initiated payments to the victim's creditors using non-existent accounts. Since these payments were from non-existent accounts, they were later reversed. This often resulted in additional debt for victims, in the form of fees for failed payments from their creditors.

11. Between about November 2016 and December 2016, the conspirators initiated approximately 133 payments using account numbers from non-existent TDFCU accounts but using legitimate TDFCU routing numbers. These payment requests were initially processed at the Federal Reserve Bank location in Baltimore, Maryland, and then transferred to TDFCU for processing by TDFCU's computer processing systems in Washington, D.C. TDFCU determined these wires were fraudulent and did not disperse funds.

12. The conspirators used an integrated invoicing platform connected to the websites to send invoices to each victim for the processing fee. The invoices included a warning that if victims did not pay quickly, payments to their creditors would be reversed and they could face civil litigation. The conspirators received weekly emails from the invoicing platform that summarized the amount that was invoiced to victims and the amount that was reportedly paid by victims.

13. The conspirators instructed victims to pay processing fees through various mechanisms including: Western Union, MoneyGram, PayPal, and bank transfers. Victims who could not afford to pay the processing fee in a single payment were offered a payment plan to pay in installments. The conspirators requested many victims to pay the processing fees via Western Union or MoneyGram payments that were then picked up by members of the conspiracy in Jamaica. The conspirators created a PayPal account associated with the National Credit Relief email address. The PayPal account was used to receive processing fee payments from National Credit Relief victims. Records from Western Union, and MoneyGram, and related bank transfers indicate that the conspirators caused an actual loss to victims of at least $66,266.21.

## EXAMPLES OF THE USE OF VICTIM INFORMATION

14. SAVARIAU and her conspirators used victim personal identifying information collected in the SERVgov scheme in furtherance of the debt collection schemes for National Credit Relief and American Bill Aid.

### M.S.

15. M.S., who lived in Arkansas, applied for debt relief on the SERVgov website on or about January 3, 2017, and provided information to include her name, address, date of birth, social security number, and mother's maiden name. After submitting her outstanding bills to the website, M.S. was instructed by the conspirators to pay a $6,004.02 processing fee by an initial payment of

$850, followed by 10 installments of $515.20. On or about January 19, 2017, M.S. sent $810 to the conspirators in Jamaica via Western Union.

16. On or about May 8, 2017, the conspirators applied for a Bluebird by American Express pre-paid credit card using M.S.'s name, date of birth, and social security number.

17. On or about May 9, 2017, the conspirators created a PayPal account in M.S.'s name and using her date of birth ("M.S. PayPal account"). The account was also associated with the Bluebird credit card in M.S.'s name. The M.S. PayPal account was used to receive payments from National Credit Relief victims and by the conspirators to make purchases and ATM withdrawals.

18. On or about May 4, 2017, conspirators used M.S.'s first initial and last name to register National Credit Relief LLC with the California Secretary of State. Approximately three weeks later, the filing with the California Secretary of State was updated to include M.S.'s full first name. Conspirators also used M.S.'s first initial and last name to register the domain nationalcreditrelief.us.

19. The conspirators created a Gmail email address in M.S.'s full name. It was used as the billing email associated with the domain americanbillaid.com.

20. M.S. did not give members of the conspiracy permission to use her information to apply for an American Express card, to open a PayPal account, to create a Gmail address, or to register a website. Like the other victims, she also did not receive the promised debt relief.

### E.M.

21. On or about November 4, 2016, E.M., who lived in Georgia, signed up for SERVgov's bill payment program by submitting her personal information and information about her outstanding bills on the website. The conspirators requested that E.M. pay the processing fee via ACH deposit from her bank account. On December 6, 2016, E.M. received information from SERVgov that her submitted bills had been paid in full.

22. Soon thereafter, E.M. was told by Capital One, where she had two credit cards, that the payments had been reversed. On or about December 7, 2016, E.M. contacted TDFCU, which informed her that the following payments had been rejected as fraudulent:

   a. Payment of $2,337.14 made to Capital One on or about December 5, 2016.

   b. Payment of $1,078.96 made to Capital One on or about December 5, 2016.

   c. Payment of $1,623.31 made to Dell Financial on or about December 5, 2016.

   d. Payment of $1,242.96 made to U.S. Bank N.A. on or about December 6, 2016.

23. E.M. decided not to send any money to SERVgov.

24. The conspirators registered the American Bill Aid website under E.M.'s name and used her home address as the business address.

25. E.M. did not give members of the conspiracy permission to use her name and address to register the American Bill Aid website.

## ADDITIONAL INFORMATION ABOUT THE SCHEME

26. More than fifty individuals sent money to conspirators as a result of the scheme, most commonly through Western Union. Moreover, a substantial part of the scheme was committed outside the United States, that is, Jamaica.

27. SAVARIAU's conduct violated a prior judicial order issued in September 2015 by the Honorable Reggie B. Walton in Case No. 14-CV-1414 that, among other things, permanently restrained her and those working with her from misrepresenting to others that they would reduce substantially consumers' debts.

28. Conspirators intended to defraud victims out of more than $550,000. Specifically, between approximately June 2016 and July 2017, SERVgov invoiced victims at least $600,000, i.e., that was the amount that victims were told to pay SERVgov for the debt relief services

SERVgov purportedly offered consumers. As noted above, victims sent members of the conspiracy at least $66,266.21 as a result of the scheme.

29.   SAVARIAU admits that the proceeds from the scheme to defraud have been dissipated by her and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By: *[signature]*

KONDI J. KLEINMAN, California Bar No. 241277
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6887 | Kondi.Kleinman2@usdoj.gov

ASHLEY R. PUNGELLO, D.C. Bar No. 1735733
Trial Attorney
Computer Crime and Intellectual Property Section
United States Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-2842 | Ashley.Pungello@usdoj.gov

### DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I read every word of this Statement of Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: Apr. 5, 2024

SEREIKA SAVARIAU
Defendant

### ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 4/5/24

MARIA N. JACOB, Esq.
Counsel for Defendant